53  291
s19NW  1,
f130 ¹ 53

CHARLES KRAMER v. RICHARD P. GUSTIN ET AL.

*Effect of concessions made on the trial.*

1. Rulings or instructions that are based on facts or propositions conceded on the trial cannot be complained of if correct in themselves.

2. Assignments of error will not be considered if the instructions on which they are based have been rendered immaterial by the verdict of the jury.

3. A retail dealer secured his purchases of stock by giving chattel mortgages thereon. He afterwards gave another chattel mortgage, as to which it was disputed whether it was meant to supersede the earlier ones or not. The mortgagee received more than enough money to satisfy the latest mortgage, and, having seized the stock under one of the earlier ones, was sued in trover by the mortgager. He conceded on the trial that if the last mortgage superseded the former ones, he had no claim under it, and did not rely on it as a defense to the action. The jury found, specially, that it did supersede the earlier mortgages. *Held*, that this finding was conclusive, and that the mortgagee's concession left him without any justification for seizing the mortgager's stock.

Error to Alpena. (Emerick, J.)   January 17.—April 16.

TROVER.   Defendants bring error.   Affirmed.

*Isaac Marston* and *John Atkinson* for appellants.

*J. D. Turnbull* for appellee.

CHAMPLIN, J.   The plaintiff brought an action of trover against the defendants for the conversion of a stock of goods which defendants had seized and sold, as they claimed, under a chattel mortgage executed by plaintiff to them, and also for the conversion of a quantity of cedar ties, posts and telegraph poles. The cause was tried before a jury, who found a verdict for plaintiff, and the defendants allege error. All the errors assigned relate to the charge of the court.

The defendants were wholesale grocers at Bay City, and the plaintiff was a grocer at Alpena, and in connection with his business there was engaged in dealing in railroad ties, cedar posts and telegraph poles. In 1878 plaintiff commenced to purchase goods from defendants, and on the 2d day of January of that year had obtained a credit of $412, which he secured by a chattel mortgage on his stock of goods in his store at Alpena. This indebtedness he was to pay on or before May 1st, 1878. On March 30th, 1878, plaintiff gave defendants another chattel mortgage upon his stock of goods and fixtures then in his store at Alpena, and the mortgage was so drawn as to cover future accessions to the stock. This mortgage was conditioned to pay defendants

" the sums of all moneys that may now be due said second parties on goods already purchased, and all moneys that may become due for goods that may be shipped to said first party by said second parties from time to time." Then follows a provision as to time of payment, and all the goods were to be paid for by January 1st, 1879. On November 21st, 1878, plaintiff signed and delivered to defendants a paper writing, as follows:

"BAY CITY, Mich., Nov. 21, 1878.

Whereas, Chas. Kramer, of Alpena, Mich., has an open book account with Gustin, Merrill & Co., of Bay City, and whereas said Kramer proposes to trade goods for cedar posts and ties during the coming winter; now, it is hereby agreed that said Kramer will buy said cedar posts and ties, and pile them on Hitchcock's dock at Alpena, or some dock in Alpena, to the order of Gustin, Merrill & Co.; said cedar posts and ties, when so bought, shall be piled on some convenient dock that said Kramer may select in Alpena, and be and belong to said Gustin, Merrill & Co.; provided, if said Kramer, at any time he may pay said Gustin, Merrill & Co.'s book account, said Gustin, Merrill & Co. will deliver to said Kramer said posts and ties.

In witness, the parties hereto have set their hands this 21st day of November, 1878.

CHARLES KRAMER."

This was followed a little less than a year later by a more formal instrument, viz.:

"Whereas, Charles Kramer, of Alpena, Mich., did on the 21st day of November, 1878, agree with Gustin, Merrill & Co., of Bay City, Mich., that he would buy cedar posts and ties, and pile them on some dock to the order of Gustin, Merrill & Co., said Kramer to select said place of piling; said posts and ties so bought were to be the property and belong to said Gustin, Merrill & Co., in consideration of Gustin, Merrill & Co. furnishing said Kramer with supplies. Now, whereas said Kramer has placed on docks and on the beach, in the neighborhood of Alpena, a number of posts and ties belonging to said Gustin, Merrill & Co.; and whereas said Kramer wishes to continue getting out posts, ties and telegraph poles for Gustin, Merrill & Co. Now, in consideration of one dollar paid by said Kramer, it is hereby agreed that said Kramer will buy posts, ties and telegraph

poles, and pay for same in goods supplied by Gustin, Merrill & Co.; and said cedar posts, ties and poles shall be placed in some convenient place for shipment, and shall be the property of said Gustin, Merrill & Co. from the time that said Kramer purchases the same. No posts, ties or poles to be purchased by said Kramer except for Gustin, Merrill & Co., and no accounts to be made by said Kramer to any one for cedar, nor give or allow any liens to arise on said cedar posts, ties or poles. All cedar ties, posts and poles purchased or traded for by said Kramer to belong absolutely to said Gustin, Merrill & Co., and said Kramer will deliver all of said cedar on board vessels, free of charge, to said Gustin, Merrill & Co., and said Kramer will load and ship as directed, in the name of said Gustin, Merrill & Co.

This contract is made between the parties for the purpose of trade. It is provided, however, that said Kramer may, at any time he wishes, pay said Gustin, Merrill & Co. any notes, book account and advance that may be due said Gustin, Merrill & Co., then said Gustin, Merrill & Co. will deliver to said Kramer, said posts, ties and poles that they may own at the time got out for them by said Kramer.

All the above to be performed by Gustin, Merrill & Co. in consideration of one dollar, the receipt whereof is hereby acknowledged, and in consideration of book account now opened with said Kramer.

In witness the parties hereto have set their hands this first day of October, 1879.                    CHARLES KRAMER.

Witness: T. J. Post."

October 3d, 1879, the plaintiff executed to the defendants a chattel mortgage upon his stock of goods at Alpena, and all accessions thereto during the life of the mortgage, to secure the payment of $1000, payable $500 in six months, and the balance in one year, with interest at ten per cent.

It appears from the testimony returned in the bill of exceptions that plaintiff went on and purchased cedar posts, ties and telegraph poles and piled them on the docks at Alpena and vicinity, and that, in July and August, and prior to the 12th day thereof, two cargoes had been shipped by defendants to Chicago, and were sold by them in that market, and the net avails credited to plaintiff on defendants' books; that this was done by consent of both parties, but upon plaintiff's being informed of the price the shipment

sold for in Chicago, he refused to have any more shipped to that market.

In the latter part of August, 1880, the defendants seized, advertised and sold the stock of goods covered by the chattel mortgage of March 30th, 1878, and endorsed and applied the avails, $197.39, on that mortgage September 1st, 1880. This mortgage named no particular amount to be paid, but was given as security for past and future indebtedness. The defendants also took another load of cedar posts, ties and telegraph poles from the dock in the vicinity of Alpena, where plaintiff had placed them, and shipped them to Detroit, and sold them, and credited plaintiff with net avails. Just what this cargo brought does not appear. Plaintiff claims and testified that this shipment was made without his consent, and against his positive prohibition; and for this cargo he brought trover as for a wrongful conversion. The defendant, on the contrary, testifies that plaintiff did consent to his removal and shipment of the property, and only refused to have it shipped to Chicago. It does not appear with certainty the precise time when this third cargo was shipped, but I conclude from the best light the testimony affords that it was after the mortgage foreclosure, (September 1st,) and before November 1st following.

The testimony showed that at the time the last mortgage was given there was then due the defendants, after allowing all credits, $633, aside from interest, and that on July 27, 1880, he was owing defendants $1830.37, and the amount credited on account of the two cargoes sold in Chicago was near $1000, leaving at time of foreclosure about $830.37 due defendants; and that after crediting the proceeds of the mortgage sale and all cedar which defendants had received and sold, plaintiff still owed them a balance of $564.56. The plaintiff gave testimony tending to prove that the last mortgage was to supersede and take the place of all other mortgages upon the goods, and was given to secure defendants upon what he owed them on account at the date of the mortgage; that plaintiff did not give his consent to taking away any of the cedar after the second load, and forbade the

defendants and their agents taking the same; that defendant Fifield came to him while his goods were seized and told him that if he, plaintiff, would give defendants the cedar, they would allow him to go on with the store; that he refused this offer; .that the mortgage of 1879 was given to secure defendants upon what he owed them at its date upon account. The plaintiff also produced monthly statements from the defendants, from the date of said mortgage of 1879 up to July 27th, 1880, which statements were received in evidence without objection. These statements showed that since the giving of the mortgage of 1879 the plaintiff had paid defendant a much larger amount than the face of said mortgage upon his said account, and which had been credited to him on general account. The bill of exceptions then recites:

"Upon the introduction of this evidence it was claimed by the plaintiff's counsel that these statements showed conclusively that the mortgage of October, 1879, had been fully paid. Whereupon the defendant's counsel conceded that if the mortgage of October, 1879, superseded and took the place of all former mortgages, then the defendants had no claim under the said mortgage of 1879, and did not rely on the same as any defense in this action."

There was no evidence tending to show that defendants received any more for the cedar taken by them and sold than the amount which they credited them on account, after taking out freights and inspection and expenses in connection with the sale thereof; and there was no evidence tending to show that they had not sold and credited him with all the cedar taken in the manner above stated.

There was no evidence tending to show that the plaintiff did not owe the defendants the balance claimed by them, unless they could be charged with the value of the cedar taken at Alpena on the second cargo of the Winslow, or that taken afterwards by them.

There was no evidence tending to show that the agreement of October 1st, 1879, signed by plaintiff, and the agreement of November 21st, 1878, signed by plaintiff, in reference to cedar, were changed, modified or superseded, or that these

contracts did not remain in full force at the time the cedar was taken by the defendants; and there was no evidence tending to show that defendants took or claimed the cedar under any other contract or agreement than these two, except as the same may be found in the fact that plaintiff forbade them taking any cedar after a certain day, as indicated in his testimony hereinbefore given.

The circuit judge, after instructing the jury that the plaintiff could not recover in this form of action for the value of the cedar taken by defendants after plaintiff had forbidden them to do so, proceeded to the consideration of the question whether he could recover for the goods taken from the store. He charged the jury that these goods were covered by two mortgages, one executed in March, 1878, and the other on the 3d of October, 1879; that they were given upon the stock of goods in the store for the purpose of securing defendants for advances in goods which they had already made to him and which were anticipated in the future. They were collateral with the cedar contracts, which were also given for the same purpose; and for the purpose of securing the same general indebtedness; that it was claimed by the plaintiff that the mortgage of October, 1879, superseded and canceled all prior mortgages then existing on the stock, and if they should find from the evidence that this claim was true, then defendants would be liable to plaintiff for the market value of the goods in the store at the time and place they took them, because it is not claimed that defendants foreclosed this mortgage at all, but one of the mortgages which was superseded and canceled by it; that it is admitted that they did not take his goods on the mortgage of 1879. But if, on the contrary, they should not find that the mortgage of October, 1879, superseded the former ones, then there was another question in the case. And the court instructed the jury at considerable length upon the law, in case they should find that the mortgage of October, 1879, did not supersede the former mortgages.

The circuit judge submitted to the jury the question whether or not the mortgage of 1879 was to supersede and

cancel all former mortgages, and they found specially that it was. Under the concession made by the counsel for defendants on the trial this finding of the jury left the defendants without any justification for seizing the property, and leaves nothing in the case to which the principle laid down in *Brink v. Freoff*, 40 Mich. 610, can be made to apply. If the mortgage of 1879 took the place of all former mortgages, and was given to secure the balance of account at that time due, and this indebtedness had been subsequently paid, their mortgage lien on the stock of goods ceased to exist. It may be that the defendants' attorney, in making the concession, felt confident that the jury would not find from the evidence submitted that the mortgage of 1879 was given to supersede that of 1878.

Upon this material question the testimony was conflicting, and the finding of the jury upon it is conclusive upon the parties. Having found this issue in favor of the plaintiff, it became unnecessary for them to investigate the questions which would have arisen had they found that the mortgage of 1879 did not supersede and cancel the prior mortgages, and it is equally unnecessary for us to express any opinion upon that branch of the charge of the court to the jury.

The first four assignments of error relate to that portion of the charge which under the finding of the jury became immaterial; and of the remaining assignments the fifth, seventh and eighth relate to that portion of the charge covered by the concession of the defendants made upon the trial. The defendants cannot complain of any ruling or any charge of the court based upon propositions, or facts conceded to be correct upon the trial of the cause. *Albrecht v. Gies* 33 Mich. 391.

The judgment is affirmed.

The other Justices concurred.