J. STANLEY BROWN, trustee in bankruptcy, *vs.* THOMAS RUSHTON.

Essex.    November 3, 1915. — March 1, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Contract,* Performance and breach. *Stockbroker. Bankruptcy,* Rights of trustee.

Where a stockbroker upon the order of a customer buys certain shares of stock for which he pays and receives the certificates indorsed in blank by their former holders, and keeps the certificates in his office intending to hold them subject to directions from his customer and to deliver the identical certificates to him upon payment of the amount due for them, but does not tender the certificates to his customer and demand payment, and, the broker having been adjudicated a bankrupt, his trustee in bankruptcy, about nine months after the purchase of the stocks and eight months after the trustee's appointment, tenders the certificates to the broker's customer, and, on payment being refused, sells the stocks on the market at a loss and sues the broker's customer for the difference between the cost of the stocks to the broker and their selling price, he is not entitled to recover; because the title to the stocks remained in the broker and passed to the trustee and no tender of the stocks was made by the broker, and, if the trustee had a right to affirm the contract, he lost it by failing to make a tender of the certificates within a reasonable time.

RUGG, C. J. This is an action by a trustee in bankruptcy of Fisk and Robinson, stockbrokers, to recover the difference between the cost and the sale price of certain stocks bought for the defendant. This was not intended as a margin, but as a cash trans-

action. The defendant, in Boston, ordered shares of stock in three different corporations of the brokers, who had offices in Boston and New York, on January 26, 1910. His order was transmitted to New York, where the stocks were purchased in a day or two, paid for in full, and certificates in the names of third persons indorsed in blank delivered to the brokers, notices of the purchases being seasonably sent to the defendant. The certificates were placed in a general envelope, marked "Customers, Fisk & Robinson, Boston," and kept in the New York office. The brokers intended to hold these certificates subject to directions from the defendant, and send them to Boston to be there delivered to him on payment of the amounts due them thereon. Bankruptcy supervened by the filing of a petition against the brokers on February 1. A receiver was appointed a day later, and the plaintiff was appointed trustee on March 21, 1910.

There was undisputed evidence that reasonably soon after the appointment of the receiver the defendant went to the Boston office of the brokers and tendered the amount due and demanded his stock, which was refused by the person in charge, and a letter was written by the defendant's attorney to the receiver, demanding the stocks and offering to pay for them on delivery, which was refused. These circumstances were not the equivalent of demand and tender to the bankrupt or to the plaintiff. The defendant took no steps to protect his rights in the bankruptcy court. In the following November, a demand was made by the plaintiff upon the defendant for the payment of the amount due, with a proffer of the certificates of stock on payment. The defendant refusing to pay, the stocks were sold later by the plaintiff on the market at a loss from their purchase price, and this action of contract is to recover that difference. The trial judge * found also that from the time of their purchase the stocks were held by the bankrupts for the defendant at his risk, and this fact was known or should have been known by the defendant, and that it was the understanding that the particular certificates which were delivered to the bankrupts in New York were to be held for and delivered to the defendant on a proper tender, and the defendant was not bound to receive other certificates. These findings are not challenged by either side.

---

* *Raymond,* J.

The trial judge ruled rightly upon this state of facts that the plaintiff could not recover. The case is governed by *Wood* v. *Hayes*, 15 Gray, 375. There, as here, the broker was employed by his customer to buy stocks wholly out of the broker's money. The broker executed the order. Thereafter, upon a settlement, there was an indebtedness from the customer to the broker. The customer gave his note to the broker, who acknowledged that he held the shares of stock as security for the payment of the note. The broker died. The plaintiff had not demanded his stock or offered to pay the note. At the broker's death, he had no shares of stock in his own name or in the name of his customer, but owned shares which he had pledged; at any time before his death the broker, or after his death his administrator, could have procured shares for the customer upon demand for them and payment of the note. There, as here, the stock fell substantially in value after the purchase by the broker. The customer contended that the broker had no right to pledge the shares and that his estate was responsible for their value at the time they were purchased. Chief Justice Shaw, in delivering the opinion of the court, said: ".Lobdell [the broker] advanced the money to buy the shares for account of Wood, [the customer] and held the shares in his own name. It stood on the footing of contract. The contract was strictly conditional, to deliver so many shares on payment of so much money. The money was never paid and the title to have performance never accrued." In *Wood* v. *Hayes*, the purchase was not upon margin, because the customer paid nothing until he gave his note, and he never paid the note in whole or in part. In that respect that case is at least as favorable to the broker as is the case at bar. There are four distinctions between that case and the one at bar, but they are all immaterial as to the point here involved. The first is that there the broker held the shares in his own name, while here they held them indorsed in blank just as they were delivered. The second is that there, apparently, any shares might have been delivered, while here, specific certificates were expected to be delivered. The third is that in *Wood* v. *Hayes* the customer, apparently at some interval after the stocks were bought, gave his note to the broker, who held the stocks as security; while in the case at bar, no note was given. The fourth is that there the customer was seeking to hold the broker, while

here the broker is seeking to hold the customer. *Wood* v. *Hayes* has been regarded as authority, and followed in more recent cases. It has never been criticized in our own decisions. *Day* v. *Holmes*, 103 Mass. 306, 311. *Covell* v. *Loud*, 135 Mass. 41, 44. *Weston* v. *Jordan*, 168 Mass. 401. *Chase* v. *Boston*, 180 Mass. 458, 459. *Rice* v. *Winslow*, 180 Mass. 500, 502. *Furber* v. *Dane*, 203 Mass. 108, 116. It has been recognized as the foundation of the Massachusetts rule that ordinarily the title of stocks purchased by a broker for his customer remains in the broker until delivery. *Richardson* v. *Shaw*, 77 C. C. A. 643; *S. C.* 209 U. S. 365, 381. *Skiff* v. *Stoddard*, 63 Conn. 198, 214.

This conclusion appears to be supported by *In re Swift*, 50 C. C. A. 264, where at page 267 it was said by Judge Putnam: "We accept the law as well settled, alike by local usage in Massachusetts, where the dealings took place, and by the implied necessities of public transactions in stocks, as well as by general acquiescence and sound sense, that the ordinary relations between stockbrokers and their customers are executory for the sale and purchase of stock. We have, therefore, to deal with an agreement by which the bankrupts bound themselves to deliver certain stocks to Dee on payment of the balance due from him to them, and by which also the bankrupts were entitled, on reasonable notice, to tender the stocks to their customer and claim like payment. But neither party fulfilled the ordinary conditions applicable to such relations. Neither made a demand or tender. Consequently, according to the ordinary rules of law, no cause of action arose in favor of either party against the other."

If it be assumed that the intervention of bankruptcy would have enabled the trustee to elect to affirm the contract, the plaintiff is in no better posture. It was in substance found as a fact, so far as it is a fact, that the plaintiff as trustee did not elect within a reasonable time to affirm the contract, and that there were no special circumstances which justified so long a delay. It is plain that as matter of law the delay from his appointment in March until November, or even from the time when he took possession of the stocks in July, until November, was unreasonable delay in exercising whatever option the trustee may have had.

The case at bar is quite different from *Chase* v. *Boston*, 193 Mass. 522, relied upon by the plaintiff. In that case, there was a

specific agreement as to the time when title to stocks vested in the customer of the broker.

The refusals to rule as requested by the plaintiff were all warranted by *In re Swift*, 50 C. C. A. 264, upon which the trial judge relied, which is an amplification of *Wood* v. *Hayes*, 15 Gray, 375.

*Exceptions overruled.*

*F. W. Knowlton,* (*C. O. Pengra* with him,) for the plaintiff.
*H. L. Burnham,* for the defendant.