Strafford, }
June 25,1931. }

F. C. Adams Inc. *v.* Frank H. Thayer *& a. Ex'rs.*

*Wyman, Starr & Booth* and *Arthur G. Whittemore* (*Mr. Booth* orally), for the plaintiff.

*Hughes & Burns* (*Mr. Hughes* orally), for the defendant.

ALLEN, J. The plaintiff was a stockbroker. The defendant's decedent offered to pay a stated price for certain stocks to be bought by the plaintiff. The plaintiff bought them and the decedent refused to take or pay for them. A main issue is the relation between the plaintiff and the decedent. The offers, commonly termed orders, were oral, and if the transactions were sales to the decedent by the plaintiff, the statute of frauds is a defence. The plaintiff's position is that the evidence is conclusive to show a relationship of its agency. The defendant says that the evidence shows only sales, and further, that if this view of it is not sustained, it presents at least an issue of fact. The trial court ruled that the plaintiff was an agent and not a vendor, and submitted as the only issue the terms of the engagement.

The point that the statute of frauds must be pleaded specially as a defence is met by the recent case of *McCrillis* v. *Company, ante,* 165. Here, as there, the action is on an alleged contract not required to be in writing, and under the general issue it may be shown that a different contract on which there is no liability was in fact made. The declaration and the plaintiff's specification together made only a claim of a contract of agency, and such a contract is outside the statute. Under the general issue the defendant may disprove agency by showing an unenforceable contract of sale. In showing that it was oral and introducing evidence of its terms the defendant did not waive the defence of the statute. The evidence bore on the issue of agency and at the same time tended to avoid alternative liability in showing the oral character of the contract of sale. In undertaking to prove what he claimed was the real situation the defendant made no concession of liability under it. At least in this manner in which the statute is relied upon, it is a rule of remedial procedure and not of evidence. And there is here no occasion to pass upon the need of a special plea when the contract declared upon is within the statute.

The decedent gave the plaintiff an order for the purchase of 30 shares of the preferred stock of a company. The order was carried out as to 4 and the decedent paid for them. As to the remaining 26, it was arranged that the order should be changed and 20 bought with 10 of the company's common stock at a stated price for each unit of 2 preferred and 1 common. While the order for the 30 shares was

outstanding but before it was thus changed, the plaintiff bought 20 such units at a price half a point per unit less than the decedent was to pay. Later the decedent gave an additional order for 50 shares each of the company's preferred and common stock at a fixed price for each unit of 1 share of each class of the stock. The plaintiff bought these units at a price 3 points per unit under that to be paid by the decedent. Bills were sent the decedent for the prices he agreed to pay, with no commission charged. The plaintiff borrowed money to pay for its purchase of the 50 units and pledged all the units as security. The stock was not listed on an exchange and the plaintiff dealt in unlisted securities.

The transactions took place in Massachusetts and their character is to be determined by its law. It is said in *Saloshin* v. *Houle, ante,* 126, that "if no evidence of the law of a foreign or sister state is presented to the trial court, a presumption in favor of the common law will govern if that law is there in force." In extension of the statement, if it appears that a rule of the common law is not the same in all the common-law jurisdictions, the rule as established in the jurisdiction whose law governs the case is to be applied. Whether or not in accord with the weight of authority, the rule is a part of the common law of such jurisdiction. That the common law is not uniform in all states, is a fact to be recognized and dealt with. And construction and judicial notice are fully available to determine a rule even when it is opposed to the weight of authority. It would be little in keeping with the principles of comity to apply a generally prevailing rule of common law when in the search for it it appeared that the jurisdiction whose law controls had a special or minority common-law rule. Presumptions are not to militate so strongly as to discredit truth and fact.

The Massachusetts law on the subject is not wholly free from doubt. But it appears to treat a broker who buys securities for a customer as a vendor. If he also acts as an agent, it is incidental to the main character of the transaction as a sale.

When the broker sells securities, he becomes a debtor as to the proceeds. This aspect of the relationship has been given extended consideration. "He [the plaintiff] owned certain shares of stock and put them in the hands of the firm to sell for him. The firm sold the stock, received the proceeds, deposited them in their own bank account, and gave to the plaintiff a check for the amount thereof less their commission. The whole transaction was in the usual course of business, differing in no respect from any case in which commission merchants or factors sell property for their customers or consignors

. . . Except perhaps in the case of running accounts and marginal transactions, . . . we see no difference between stockbrokers and any other commission merchants. Both buy and sell for their customers; both ordinarily deal in their own names; both, subject to certain limitations, deal with the property and the proceeds of the property put into their hands as if it were their own; both of them, in the established course of business, have the right, at least unless the owner of the property seasonably intervenes, to receive the price of their sales and to deal with it as if it were their own money, accounting to their customers for such amounts as respectively become due to them. But it is settled . . . that the relation between such commission merchants or brokers and their customers is, in the absence of special circumstances, merely that of debtor and creditor, and not a fiduciary relation." *Furber* v. *Dane*, 204 Mass. 412, 415, 416.

In the case of marginal transactions, "The rule . . . is that the legal title to stocks bought or held on a margin account (in the absence of special agreement) is in the broker rather than in the customer." *Pizer* v. *Hunt*, 253 Mass. 321, 330, and cases cited.

"Purchases on margin certainly retain some of the characteristics of ordinary single purchases by an agent, out of which they grew. The broker buys and is expected to buy stock from third persons to the amount of the order . . . He charges his customer a commission. He credits him with dividends and charges him with assessments on stock. However the transaction is closed, the profit or loss is the customer's. But none of these features is decisive . . . the duties and rights of the broker with regard to the stock which he purchases ought to weigh more than anything else in deciding who is the owner of that specific stock.

"We think that . . . the brokers were not bound to keep the stock of a certain customer distinct, that they could take a single certificate in their own name for this and similar stock purchased for others, and that they could pledge the whole to a bank for advances made to them, although much in excess of the sum due to them from any one of the persons upon whose orders the stock was bought. Probably they were not bound to deliver the identical stock purchased, even subject to the large powers already enumerated, but could deliver any stock that they happened to have on hand. We have read nothing . . . that makes it seem more reasonable to describe rights of such extreme tenuity of connection with any specific object, as property in stock rather than as contractual rights." *Chase* v. *Boston*, 180 Mass. 458, 460.

And in the case of purchases by the broker of securities not to be carried by him, it is said in *Brown* v. *Rushton*, 223 Mass. 80, 83: "It has been recognized as the foundation of the Massachusetts rule that ordinarily the title of stocks purchased by a broker for his customer remains in the broker until delivery . . .

"This conclusion appears to be supported by *In Re Swift*, 50 C. C. A. 264, where at page 267 it was said by Judge Putnam: 'We accept the law as well settled, alike by local usage in Massachusetts, where the dealings took place, and by the implied necessities of public transactions in stocks, as well as by general acquiescence and sound sense, that the ordinary relations between stockbrokers and their customers are executory for the sale and purchase of stock . . .' "

This case of *Brown* v. *Rushton* is cited with approval in *Coolidge* v. *Company*, 259 Mass. 515, 522, where it is said: "Title to property not transferable at the date of the contract of sale does not pass until designated by some overt act of the seller for the buyer under the contract." While in this case the plaintiff bought stock of a "specialist" who traded in it and who was not to be termed a stockbroker, the difference would seem immaterial in view of the discussion in *Furber* v. *Dane, supra*, already set forth.

It follows that since the title to stock bought by the broker for his customer belongs to the former when delivered to him, he in turn transfers the title to the customer upon its delivery to the latter. In final analysis, the broker, if having certain incidental duties to act in the customer's behalf, yet is the owner and vendor of the stock bought on the customer's order as between them. The order is a bid or offer to buy, and not in real character an authority of agency. Acceptance of the order constitutes an executory contract of sale.

The foregoing is believed to set forth the state of the law in Massachusetts with reference to transactions like those here considered, with their special features. As has been said, it is not free from doubt. But the decisions there appear to show the law as holding the transactions to be contracts of sale.

Regarding the special features of the transactions, according to the plaintiff's own claim the decedent was ready to pay a named price for the stock he wished to acquire. It was no part of the order that the broker should make effort to obtain a better price. No commission was charged and as the plaintiff points out, the decedent had made a prior purchase of like stock without such a charge being made. If the plaintiff obtained the stock, it did not concern the decedent how much it paid for it. So far as appears, the plaintiff had no duty to

obtain any stock at a price it did not choose to pay. In substance an offer was made to buy which the plaintiff accepted when it thought it to be for its interest to do so. The situation thus differed from the ordinary case in which it is the broker's duty to buy for the customer and to obtain the stock as cheaply as possible and not above such limit of price as the customer may set.

It is difficult to perceive any relationship of agency. The plaintiff acted for itself and not for the decedent. Having an offer for the stock, it could make a profit if it could obtain the stock at a price below the offer, and this it sought to do. While it may be said in a popular sense that the plaintiff undertook to fill and filled the decedent's order, yet there is no substantial evidence of any engagement of the plaintiff's service. The decedent's offer to buy was not an employment of the plaintiff to buy for him. The purchases were not made by the customer through the broker as his agent, but by the broker acting for itself and on its own account. But if some relation of agency may in some respect be found, yet it did not alter the character of the transactions as essentially of sales.

The circumstance that the plaintiff made no service charge in the form of a commission may not be conclusive to show no agency. When the broker buys at the price the customer will pay, his charge of a commission is for the service in obtaining it for the customer. If it is the understanding, express or implied, he may charge the commission even if he has the stock on hand and does not purchase it. According to the understanding it may or may not be the broker's duty to sell at the price he pays and to make nothing out of the transaction except in his commission. But here the broker was entitled to the profit in buying below the customer's offer. The offers were not to buy for the lowest obtainable price not exceeding a maximum limit, but at the price named without regard to the broker's efforts to do better. If the decedent did not make offers rather than give orders, in any event the terms of the transactions were such as to tend to confirm their character as purchases in the limitation of service to be rendered.

Unless specially agreed otherwise, the common understanding is that in the ordinary transaction a broker buying securities for a customer does not buy them as the latter's agent. The customer is not regarded as the broker's undisclosed principal who may be held by the seller to answer for any liability of the broker in making the purchase. The seller and the customer have no relations with each other and the broker deals independently with each. Both the customer

and the seller look only to the broker in their respective undertakings with him. While the seller expects that the broker is buying for a customer, he does not count on any liability of the customer as the broker's principal. This at least is believed to be the generally accepted view when the customer is undisclosed, although the seller knows or believes that the broker is buying for a customer. Special terms in the customer's engagement of the broker may alter the relationship. But as the business of buying and selling securities is ordinarily conducted, the broker would seem to be an independent contractor rather than an agent. It is true that he renders a service and carries out an order. But this is not the test. The broker is his own master in carrying out the order and the customer has no control of its execution. Where control is not given, no agency is created.

If it is not common knowledge that this is the view taken of such transactions in the business world and if such view may seem a departure from the law as generally understood to prevail, yet the theory that the customer here was the undisclosed principal of the broker in the latter's purchases of the stock may not be upheld. The broker's purchases were at prices other than the customer's orders, and its contracts to buy were not the same as those of the customer to buy. The sellers might not claim a sale to the customer. No agency existed to charge the customer to meet the broker's obligations in its purchases. They were transactions independent of the customer's orders, although made in reliance upon the orders. They were the broker's own business. As one of the plaintiff's witnesses testified, the broker might dispose of his purchases as he saw fit until he applied them to the acceptance of the orders.

In marginal transactions a partial payment is made and the securities are carried to protect the broker for the balance, with the customer's credit added. In the transaction of a purchase on the order of the customer who makes no payment when the order is given, the securities bought are the only protection except the credit of the customer under liability. In the marginal transaction the partial payment vests no title in the customer, and when no payment at all is made, the argument for giving him title has even less ground for its support. Here no marginal transaction was contemplated. The stocks were to be delivered on payment and payment was to be made as soon as the broker had them for delivery. Until delivery they were the broker's.

These special features of the transactions all tend to confirm them as sales in the light of the Massachusetts doctrine of the stockbroker's title.

The plaintiff concedes the statute of frauds to be a defence to an oral contract of sale of stock.

To meet the defence it says that the decedent's letters written after the contracts were entered into make a compliance with the statute. No particular letter or letters in the record have been pointed out, and none are found, which amount to a memorandum, either in expressed terms or by reference to other writings, of the contracts, so as to acknowledge them. The contention fails.

The plaintiff further says that the first contract if within the statute yet meets its requirements. It is claimed to be a modification of an earlier enforceable contract and not a new contract. Part of the stock ordered by the earlier contract was bought and paid for by the decedent, and the partial payment was a substitute for a writing.

The earlier contract was to buy only preferred stock. After part was bought and taken it was arranged that part of the remainder should be bought with common stock in combined units at an agreed price for a unit. The only witness to the arrangement testified repeatedly that the balance of the earlier order was cancelled and that the new order was given in its place in consideration of the cancellation. If his version of the transaction may be rejected, there is no evidence of any other. And it may not be found from his testimony that the earlier contract was kept in force with parol changes of some of its terms. "There is here no substituted performance of the original contract, but a substituted contract." *Rosenfeld* v. *Company*, 232 Mass. 239, 245. Each party gave up his rights under the earlier contract. As a condition of the mutual rescission a new oral contract was entered into. The new contract is not enforceable, and there was no condition that it should be. Its oral and hence unenforceable character met the terms of the condition. The trouble with the plaintiff's argument is that it assumes what might have been done as in fact done.

The result dispenses with further consideration of the case.

*Judgment for the defendant.*

All concurred.

ON REHEARING. After the foregoing opinion was filed, the plaintiff moved for a rehearing.

*Wyman, Starr & Booth*, for the motion.

*Hughes & Burns*, opposed, furnished no brief.

ALLEN, J. By the decision already rendered transactions with the special features which the case presents and which are set forth in the opinion are held to be purchases from the broker under Massachusetts law. No sufficient reason appears for reconsidering this conclusion. So far as the opinion expresses views of the Massachusetts rule in the simple and ordinary case of the purchase or sale of securities by a broker for his customer, the views are merely of foreign law upon a collateral question unnecessary to a decision upon the facts here presented.

If in the substitution of the contract for the one that was cancelled the plaintiff acquired any rights, they arose under the duty to restore benefits received when advantage of the statute of frauds is taken. The substituted contract is unenforceable by reason of the statute, but it may be that the plaintiff may be entitled to recover the value of the gain to the defendant's decedent in obtaining the cancellation of the original contract. By invoking the statute as to the new contract, the cancellation of the original one was not set aside, but liability may perhaps be imposed to pay what it was worth to be released from it. At best it would be a small amount so far as now appears. The plaintiff has made no claim of such a character and its merits are not presented. The opinion is intended to express no views denying its validity.

Nor is it necessary to consider the effect of the Massachusetts statute of frauds in a suit here upon a contract made and to be performed there. Aside from the plaintiff's concession that the statute applies to sales of corporate stocks, the local statute (P. L., c. 166, s. 4) is to be enforced if that of Massachusetts is not, and there is no difference between them in their inclusion of stocks within their scope. Within the meaning of "choses in action," as the phrase is used in the local statute, stocks are clearly to be embraced. No legislative purpose to include notes and bonds, unquestionably thus to be described, and to exclude stocks from the description, can be found.

Further consideration of the motion needs no statement.

*Former result affirmed.*

All concurred.