95 N.J. Super. 96 (1967)
230 A.2d 154
MICHAEL STOTT, PLAINTIFF-RESPONDENT,
v.
ARTHUR GREENGOS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1967.
Decided April 20, 1967.
*98 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Abraham Natovitz argued the cause for appellant.
Mr. Frank J. Davies, Jr. argued the cause for respondent (Messrs. Davies & Davies, attorneys).
The opinion of the court was delivered by LEWIS, J.A.D.
In this suit plaintiff Michael Stott seeks to recover the difference between the price paid by his assignor, Eastman Dillon, Union Securities & Co. (herein Eastman Dillon), for the purchase of 100 shares of Syntex Corporation[1] and the price at which the shares were sold. The cause was tried in the Law Division without a jury. Plaintiff was awarded a judgment of $5,451.71 plus interest and costs, and defendant Arthur Greengos appeals.
The record reveals that Donald J. Unger, an employee of Eastman Dillon, testified for plaintiff. He stated that on Thursday, January 23, 1964, he received a telephonic "limit order" from Greengos for the purchase of 100 shares of Syntex at not more than $167 per share; they were actually purchased the same day at a price of $164 3/8 per share; he called defendant that afternoon to confirm the transaction, and defendant *99 had requested him to sell if the stock reached a point $5 above the purchase price. Defendant's testimony was that he limited his order to a price of $164 1/4 per share; he instructed Unger to sell if the stock went either up or down four or five points, and he never received a telephonic confirmation of purchase which he had specifically told Unger he required. We note that that alleged requirement was not pleaded.
Defendant further testified that on Saturday, January 25 he received a written confirmation of the purchase at $164 3/8. Monday, January 27, he spoke with Unger and a Paul Ford, the Eastman Dillon office manager, and disclaimed any interest in the stock because it was purchased at a price 1/8 point above the limit of his order. Subsequently, upon receiving a letter and a telegram demanding payment by noon January 31, he responded with a letter denying any interest in the stock due to the error in the purchase price. The shares were sold January 31 at the market price which had declined more than $50 per share.
Defendant urges three grounds for reversal: (1) there was no competent proof as to damages because neither the purchase nor the sale confirmation slips should have been admitted into evidence; (2) the court abused its discretion when it refused to grant an adjournment to the following day in order to allow defendant to produce a witness who failed to appear, and (3) the court committed error in refusing to consider the defense of statute of frauds under N.J.S. 12A:8-319(c) of the Uniform Commercial Code.
Unger testified as to the practice of confirmation of purchase and sale, and that he knew, of his own knowledge, that the stock was sold as indicated in the confirmation of sale. The court allowed the documents in evidence as business entries. That ruling comports with the statutory requirements set forth in N.J.S. 2A:82-35 and the judicial interpretations thereof. See Mahoney v. Minsky, 39 N.J. 208 (1963); Hackensack Hospital v. Tiajoloff, 85 N.J. Super. 417 (App. Div. 1964); Fagan v. City of Newark, 78 *100 N.J. Super. 294 (App. Div. 1963); Webber v. McCormick, 63 N.J. Super. 409 (App. Div. 1960). Note, Rule 63(13) of the Proposed Rules of Evidence. The fact that the confirmations may be styled self-serving does not affect their admissibility. Mahoney v. Minsky, supra, 39 N.J., at p. 219.
The granting of an adjournment is discretionary with the trial court; an appellate tribunal may reverse a denial thereof only if the judicial action was "clearly unreasonable in the light of the accompanying and surrounding circumstances" and "resulted prejudicially to the rights of the party complaining." Smith v. Smith, 17 N.J. Super. 128, 129, 133 (App. Div. 1951), certification denied 9 N.J. 178 (1952); Fotopak Corp. v. Merlin, Inc., 34 N.J. Super. 343, 347 (App. Div. 1955). Here it does not appear that the testimony sought to be produced would have had any substantial effect on the resolution of the essential issues. Accordingly, the determination of the trial judge was not at odds with the doing of substantial justice and did not prejudice defendant's rights. See R.R. 1:5-3(b); 2:5.
Article Eight of the Uniform Commercial Code, N.J.S. 12A:8-319, provides:
"A contract for the sale of securities is not enforceable by way of action or defense unless
(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or
(b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or
(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or
(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."
*101 Defendant contends that under subsection (c) his letter of January 30, disclaiming any interest in the stock, raises the statute of frauds defense and precludes enforcement of the agreement. Plaintiff argues that the statute does not apply to a transaction between a broker acting as an agent and his customer. The trial court agreed with plaintiff and ruled that the statute was not a defense.
The UCC provision is limited specifically to transactions involving a "contract for the sale of securities." See also N.J.S. 12A:1-206, 12A:2-201 (UCC). The Code states that a "contract for sale" "consists in the passing of title from the seller to the buyer for a price." N.J.S. 12A:2-106(1). The question, then, is whether the transaction between Eastman Dillon and defendant involved a contract for the sale of securities wherein the former was the seller and the latter the buyer, or, on the other hand, was their relationship one of agency whereby Eastman Dillon acted as defendant's agent.
Research has failed to reveal any reported judicial consideration of this issue under 8-319 of the Code. However, the New Jersey Study Comment states that the provisions of 8-319 are "inapplicable to transactions between a broker and his customer. * * * [T]he basis of his relationship with the customer is not that of buyer and seller, but that of principal and agent". (Comment 7, at p. 272). California has resolved the point by adding the following language to its version of the statute: "A contract relating to the purchase or sale of securities between a broker acting as an agent and his principal is not subject to the provisions of the section." California Commercial Code (UCC), § 8319 (2). The Permanent Editorial Board considered the California variation but rejected it because "it merely states the obvious proposition that a contract between principal and agent by which the latter buys or sells for account of the former is not a `contract of sale.' It is therefore unnecessary and perhaps confusing." Quoted in Willier and Hart, Uniform *102 Commercial Code  Reporter  Digest (1966), § 8-319, p. 1-612.
The pre-UCC statute of frauds was R.S. 46:30-10 (Uniform Sale of Goods Law). It, too, was limited in applicability to a "contract to sell or a sale of any goods or choses in action". R.S. 46:30-10(1). The weight of authority interpreting similar statutory provisions holds that, "Where one contracts with a broker to act as his agent in purchasing stock for him, such contract is one of agency rather than for the sale of goods, wares and merchandise. Such a contract of agency is not within the statute of frauds." Cammann v. Edwards, 340 Mo. 1, 100 S.W.2d 846, 850 (Sup. Ct. 1936). Accord, Campbell v. Willis, 53 App. D.C. 296, 290 F. 271, 274 (D.C. Cir. 1923); Backus v. Taplin, 81 F.2d 444, 446 (7 Cir. 1936); A.L. Jameson & Co. v. Redfield, 118 Cal. App. 59, 4 P.2d 817 (D. Ct. App. 1931); Rutland, Edwards & Co. v. Cooke, 44 Cal. App.2d 258, 112 P.2d 287, 289 (D. Ct. App. 1941); Wachob, Bender & Co. v. Omaha Life Ins. Co., 128 Neb. 320, 258 N.W. 657, 659 (Sup. Ct. 1935); Libaire v. Feinstein, 133 Misc. 27, 231 N.Y.S. 3 (City Ct. of N.Y. 1928); Simons v. Rubin, 145 Misc. 761, 260 N.Y.S. 776 (City Ct. of N.Y. 1932); Prince v. Scura, 241 App. Div. 387, 272 N.Y.S. 362, 364 (App. Div. 1934); Wiger v. Carr, 131 Wis. 584, 111 N.W. 657, 658, 11 L.R.A., N.S., 650 (Sup. Ct. 1907); Dubin v. Mohr, 247 Wis. 520, 19 N.W.2d 880, 881 (Sup. Ct. 1945). Contra, F.C. Adams, Inc. v. Elmer F. Thayer Estate, 85 N.H. 177, 155 A. 687, 689-691 (Sup. Ct. 1931), affirmed on rehearing 85 N.H. 177, 156 A. 697 (Sup. Ct. 1931) (interpreting Massachusetts law).
One of the underlying purposes and policies of the Uniform Commercial Code is "to simplify, clarify and modernize the law governing commercial transactions". N.J.S. 12A:1-102(2)(a). The aim is to avoid the anachronisms of the past. In view of the criticism that the inclusion of any statute of frauds provision in Article Eight has received (see Guttman, "Investment Securities under the Uniform *103 Commercial Code," 11 Buffalo L. Rev. 1, 18-21 (1961)) and the observation that "seventeenth-century procedural difficulties requiring such methods of proof no longer exist" (Guttman, "Article 8  Investment Securities," 17 Rutgers L. Rev. 136, 144 (1962)), it is not likely that the Legislature intended, by adopting 8-319, to reverse the judicial determinations under the Sales Act and impose procedural requirements which are "out of touch with modern methods" of securities transactions. Ibid. It is the conclusion of this court that N.J.S. 12A:8-319 does not apply to transactions between a broker and his customer and that the trial court was correct in refusing to recognize the statute of frauds as a defense to this action.
The judgment of the Law Division is affirmed.
NOTES
[1] A stock listed on the American Stock Exchange.