STANLEY D. LINDSEY et ux.

*v.*

STEIN BROTHERS & BOYCE, INC.

433 S.W.2d 669

(*Nashville,* December Term, 1967.)

Opinion filed October 25, 1968.

HUGH C. HOWSER, Nashville, for appellants.

HARRIS A. GILBERT, Nashville, for appellee; BARKSDALE, WHALLEY, LEAVER, GILBERT & FRANK, Nashville, of counsel.

150

Mr. Chief Justice Burnett delivered the opinion of the Court.

The original bill was filed herein by the appellants, customers, against their stockbroker, appellee, for an alleged breach of contract by failing to sell securities in compliance with an order by telephone to sell. The bill was demurred to for reasons hereinafter stated and sustained by the Chancellor, and this appeal resulted.

Prior to January 17, 1968, the complainant had purchased certain stocks through the defendant, a brokerage house, including 100 shares of Kentucky Fried Chicken Corporation at 60½, the certificates being issued in the name of the appellant and his wife. This transaction had been with a Mr. Brooks of the brokerage house. The bill alleges that on January 17, Mr. Lindsey called the brokerage house and discussed his stock with Mr. Brooks. After receiving Mr. Brooks' opinion that the stock would go to 100, Mr. Lindsey alleges that "he gave an order to Mr. Brooks to sell his 100 shares of Kentucky Fried Chicken Corporation at 85, and Mr. Brooks accepted same."

The bill further alleges that on January 19, following, the stock advanced above 85 and Mr. Lindsey called Mr. Brooks to inquire about the sale, at which time Mr. Brooks denied that Mr. Lindsey had placed an order to sell, but agreed to look into the matter. The transaction resulted in a final denial of the order to sell on January 31, 1968. The appellants immediately ordered the stock

sold. The defendant complied by selling the stock at $64.00 per share, a total sales price of $6,400.00 less commission of $45.40. The complainants allege that they are entitled to recover the difference between $8,500.00, which the stock would have brought if sold at $85.00 per share, and the $6,400.00 because "the defendant breached his order to sell said shares of stock at 85 for a total amount of $8500.00 * * *"

To this bill the stockbroker demurred and subsequently filed an amended demurrer which in effect alleged that the contract was not in writing signed by the parties against whom enforcement was sought sufficient to indicate a sale for a stated quantity of described securities at a definite or stated price as required by U.C.C. 8-319, which is T.C.A. 47-8-319; alleged that the bill showed that none of the other conditions and exceptions of said statute had been met; and alleged that the bill showed on its face that defendant had denied that a contract was made.

Excellent arguments have been made on both sides. Likewise both sides have filed very excellent and comprehensive briefs, and we, after studying all the authorities there cited, and making an independent investigation of the question due to its newness and novelty, have reached a conclusion hereinafter to be set forth.

Article 8 of the Uniform Commercial Code (hereinafter called U.C.C.) T.C.A. 47-8-319, provides:

*"Statute of frauds.—A contract for the sale of securities* is not enforceable by way of action or defense unless

"(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a con-

tract has been made for sale of a stated quantity of described securities at a defined or stated price; or

"(b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or

"(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten (10) days after its receipt; or

"(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price." (Emphasis supplied.)

Obviously the question presented is whether or not the contract between a stockbroker and his customer whereby the broker is engaged on a commission basis to sell stock for the customer is subject to this statute of frauds, T.C.A. 47-8-319.

After thorough research by counsel on both sides and by us, we can find only one case which is what is commonly known as a "spotted cow" case, that is, *Stott v. Greengos,* 95 N.J.Super. 96, 230 A.2d 154. This case is likewise reprinted by the authors of Uniform Commercial Code Reporting Service, in Volume 4 thereof, at page 215, and interprets the New Jersey Code Section, which is identical to ours, in U.C.C. 8-319. The *Stott* case, 230 A.2d, 154, 157, cites as supporting their conclusion twelve other cases from twelve different courts of last resort of

the United States. The author of the *Stott* case, finding no authority pro or con in reference to U.C.C. 8-319 considers these twelve pre-U.C.C. cases as the closest to the question involved. The twelve pre-U.C.C. cases involve the question whether the statute of frauds (as codified in the uniform sale of goods law, T.C.A. 47-1204) is limited in application to "a contract to sell or sale of goods or choses in action."

The *Stott* opinion says that these cases hold that "where one contracts with a broker to act as his agent in purchasing stock for him, such a contract is one of agency rather than for the sale of goods, wares or merchandise. Such contract of agency is not within the statute of frauds." The case then cites the twelve cases which it is needless for us to again cite because by reading the *Stott* opinion they will be found. We have read each of these pre-Code cases which involve the issue of whether the broker-customer relationship is one of principal agent or seller and purchaser. Eleven of these cases support the *Stott* decision, the twelfth is distinguishable on its facts.

In the twelfth case, *F. C. Adams v. Elmer F. Thayer Estate,* 85 N.H. 177, 155 A. 687, 689, 691, 156 A. 697, the customer had told his broker that he wanted to purchase a particular unlisted security at a designated price. The broker was not retained on a commission basis, as he was in the *Stott* case, but was to purchase the stock for the lowest price that he could and then re-sell the shares to the customer at the previously designated price. Under these circumstances the court in this New Hampshire case held that the broker actually sold securities to his customer and the statute of frauds was applied to the transaction.

T.C.A. 47-8-319 establishes that, "A contract for the sale of securities is not enforceable by way of action or defense unless * * *" one of four stated conditions is met. The language of this section of the Code indicates that only contracts involving a sale of securities must meet the statute of fraud requirements. The issue to be decided may be disposed of by determining whether the contract between broker and customer is one for the sale of securities. To reach the preceding issue one must define the word "sale". T.C.A. 47-2-106 states that "A 'sale' consists in the passing of title from the seller to the buyer for a price." Obviously, the contract sued on in the present case does not in any way allege a sale. All that is alleged is the simple instruction to a stockbroker by the owner of the stock to take his stock and sell it at a certain price. These facts establish not a sale but only an agency relationship.

American Law Institute Restatement of Law, 2nd Ed., on Agency at page 7 of said work defines Agency thus:

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

"(2) The one for whom action is to be taken is the principal.

"(3) The one who is to act is the agent."

Under the comments on sub-section (3) above quoted the author states at page 11 of this work that: "Thus, the attorney-at-law, the broker, the factor, the auctioneer, and other similar persons employed either for a single transaction or for a series of transactions, are agents although as to their physical activities they are independ-

ent contractors.'' In the *Scott* case, supra, a customer placed an order with his broker to purchase for him a particular stock at a price not in excess of one designated by the customer. The broker made the purchase and mailed a confirmation to the customer. Upon receipt of the confirmation of purchase the customer wrote his broker disclaiming any interest in the stock, alleging that it was purchased at a price higher than the other authorized. The broker sued the customer for the loss he took when he sold the stock.

The determinative issue was whether the contract between the customer and broker was one for the sale of securities thereby being subject to the statute of frauds. The court held in the *Stott* case, supra, that the contract whereby the customer authorized his broker to purchase stock for him on a commission basis is not a contract for the sale of securities but merely a contract of agency. The definition of a sale found in T.C.A. 47-2-106 and used by the New Jersey Court in the *Stott* case, supra, is specifically applicable only to Article 2 of the U.C.C. dealing with sales. However, the definition can certainly be adopted to apply to T.C.A. 47-8-319 since Article 8 contains no definition of sale. If the definition of ''sale'' contained in T.C.A. 47-2-106, above quoted, is adopted to apply to 47-8-319, T.C.A., the most important fact involved in determining whether the case presently before the Court involves a contract of sale is whether title passed from the customer to the broker and then to the ultimate purchaser, whether the broker was merely a conduit, the title never vesting in him but passing directly from the seller to the customer.

It seems to this Court that the *Stott* decision is logically sound and clearly was within the purpose of the

U.C.C. as expressed in T.C.A. 47-1-102(2), which is to bring the law governing commercial transactions into accord with actual commercial practice.

In addition to what is said in the *Stott* case and its holding the editors of the Uniform Commercial Code Reporting Service in volume 4, immediately preceding the reporting of the *Stott* case, said this (Editor's note):

"The Official Comment to 8-319 states that 'Paragraph (c) (of the section) is particularly important in the relationship of broker (Section 8-303) and customer.' Cf., however, Isreals and Guttman, Modern Securities Transfer, Appx pp 70-71 (1967), where it is stated that 'As between a broker and his customer the applicability of this section will depend upon whether or not the broker acts as agent, or (as in some transactions on the over the counter market), as principal sells to or purchases from his customer. * * * Where the broker acts as agent the contract between broker and customer is not 'for the sales of securities.' * * * (E)ven where * * * the transaction is conducted entirely orally (perhaps entirely by telephone), the contract should be completely enforceable under the general provisions of the Statute of Frauds permitting enforcement of oral contracts performed within one year * * * In strict terms, this section would not be applicable in such a case."

Such noted teachers and authorities as Professor Willison have criticized the provision of the U.C.C. in reference to the statute of frauds as found in T.C.A. 47-2-201 as "the most iconoclastic" provision in the Code. This article by Professor Willison was written prior to the adoption of the Code by any of the States and is found in 63 Harvard Law Review 561, at page 573. About the

same time others wrote praising the U.C.C. and as a whole it is unquestionably subject to great praise, but it is easy by reading again the quoted provisions herein, T.C.A. 47-8-319, to see how from a practical standpoint it would be impossible for one to call a stockbroker and tell him to buy or sell some shares of this or that and to have any writing to substantiate the telephone conversation.

The broker making notes and sending them to the customer in compliance with the second comment in T.C.A. 47-8-319 is particularly relied upon by the appellee. This question is considered not in reference to the U.C.C. but whether or not the broker's note meets the statute of frauds. A very interesting note in Willison on Sales, Vol. 1, beginning at page 337, Section 116, cites an English decision hundreds of years old, with annotations to date. Although none of the annotations are particularly applicable to the state of facts involved in the present lawsuit, the cases noted are interesting when considered in conjunction with the comment on paragraph (c) of the section here involved.

Counsel for the appellee relies greatly on *Mortimer B. Burnside & Co. v. Haverner Securities Corp.*, 25 A.D.2d 373, 269 N.Y.S.2d 724 (1966). After a thorough study of this case we do not think that it is particularly applicable to the facts of the present case even though a statement is made in next to the last paragraph of the opinion that:

"A writing is the only other statutory protection against frauds. The purchase of stock from Friedman could have been made for any number of reasons quite apart from any promise by the defendants. It is not 'unequivocally referable' to a promise to deliver the

warrants. (Citing authority). The alleged agreement with the defendants therefore comes within the statute of frauds, is not enforceable and it was proper to grant summary judgment dismissing the complaint.''

It will be noticed that there was also the question of a sale and the court in the early part of the opinion made the statement in this case that ''The first question that arises is whether this transaction contemplates a 'sale'.'' The dissenting opinion in this case likewise states that there was no sale. In other words that was the disagreement, according to the majority there was a sale and the minority thought there was not. This is an opposite proposition to that which we have before us.

There are other cases, too, where the question of the effect of a demurrer to the declaration or the bill in these other state courts is discussed. The question was not argued whether or not it was a sale. Those opinions made the assumption that the statute did apply and the question determined there was whether or not the demurrer admitted the contract. It is not necessary for us to consider this in the present case in view of the conclusion we reached on the proposition which is determinative of this lawsuit.

Uniform Laws Annotated has gotten out a special master edition on the U.C.C. where they consider at page 674 of Vol. 2 the particular section that is involved in the present case. Six or seven cases are briefed or annotated under this section in this volume of U.L.A., but none of them other than *Stott v. Greengos,* supra, are in point to the question here involved.

After a very thorough consideration of the question we are satisfied that under the bill here as demurred to

that the well-pleaded facts which are admitted by the demurrer as well as the reasonable and natural inferences to be drawn from these facts established that the statute of frauds, here plead and relied upon, does not apply to the present case. The result is that the decree of the Chancellor will be reversed and the case remanded for further pleading· and anything necessary not in opposition to what we have said herein.