E. F. HUTTON, Appellant,

v.

William S. ZAFERSON, Appellee.

No. 15301.

Court of Civil Appeals of Texas, San Antonio.

May 8, 1974.

Rehearing Denied June 5, 1974.

Don M. Baucum, King, Joseph & Baucum, San Antonio, for appellant.

Charles C. Wright, San Antonio, for appellee.

BARROW, Chief Justice.

Appellant, a licensed stockbroker, has appealed from a take-nothing summary judgment entered in its suit to recover for stock allegedly purchased for appellee pur-

suant to his telephone order. The trial court held that the claim was barred by the Statute of Frauds, towit: Article 8.319, Texas Business & Commerce Code, Tex. Rev.Civ.Stat.Ann.V.T.C.A.

The summary judgment is based on the pleadings, written interrogatories, and affidavits of appellee, of Michael Muns, an account executive of appellant, and of Daniel Howell, assistant vice-president of appellant. Although appellee denied under oath that he ordered the stock, he concedes that on this appeal from the granting of the summary judgment we must accept as true the testimony of Muns and Howell regarding the transaction.

The following facts are thus established. Prior to March 2, 1973, appellee had frequently telephoned Muns and obtained quotes on various stocks, including Lake Shore Mines (LKK). The two persons had never personally met, although appellee had purchased through Muns 2,000 shares of Henry's Drive Inn stock on January 31, 1973, for approximately $1,100.00. About 8:50 a. m. on March 2, appellee telephoned Muns and asked the latter to secure a quotation on LKK in that he wanted to buy 2,000 shares. Muns returned the call about 9:05, and appellee requested Muns to buy 2,000 shares at $4.00. The order was placed to appellant's New York office, and such representatives purchased the stock on a stock exchange. Upon receiving confirmation of the purchase, Muns telephoned appellee and confirmed the sale. At such time, appellee requested Muns to secure an additional 2,000 shares at 3⅝. This order was filled that day, and in confirming same to appellee, Muns, at the suggestion of Howell, requested an $8,000.00 deposit from appellee. Appellee declined and reminded Muns that a purchaser had five business days in which to pay for the stock secured by a broker. Appellee acknowledged that he would bring the money in on March 9.

On March 9, 1973, appellee received written confirmation from appellant's Houston office confirming the purchase of 4,000 shares of LKK and billing him for the cost plus commission. On March 12, 1973, appellee telephoned Howell and advised that he had never ordered such stock. The 4,000 shares of stock were then sold by appellant at a net loss of $4,383.05. Suit was filed by appellant against appellee to recover the amount of such loss together with exemplary damages for appellee's fraud in procuring said stock. It was alleged by appellant that appellee intentionally defrauded appellant by taking advantage of the five day grace period rule for covering a transaction, and that appellant did not intend to pay for the stock unless it increased in value within the grace period. It was alleged that appellee had used this same scheme on other occasions.[1]

Section 8.319, supra, provides in part:

"A contract for the sale of securities is not enforceable by way of action or defense unless

(1) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker . . . ; or

(2) delivery of the security has been accepted or payment has been made . . . ; or

(3) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under Subdivision (1) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

(4) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made. . . . "

---

1. See A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2nd Cir. Court of Appeals 1967).

Appellant concedes on this appeal that its claim is based on the telephone request by appellee and that none of the statutory exceptions is applicable. Therefore, the question before us is whether or not the contract between a stockbroker and his customer, whereby the broker is engaged on a commission basis to buy shares of stock for the customer, is subject to this statute of frauds. We have not been cited to a Texas case which considered this question, or found one by our independent research.

It is seen that the Uniform Commercial Code Comment No. 2, under this section states in part that Subdivision (3) is important in the relationship of broker and customer; and, thus, inferentially at least, indicates that Subdivision (3) is applicable. Furthermore, in Weiss v. Dempsey-Tegler & Company, 443 S.W.2d 934 (Tex. Civ.App.—Amarillo 1969, writ ref'd n.r.e.), the court, by dicta, assumed this statute was applicable to the relationship between broker and customer. Nevertheless, the court there held that the broker was acting as the agent of the customer in purchasing 30 shares of common stock pursuant to the customer's telephone request.

Four cases from other jurisdictions have considered the question and all held that the statute of frauds is not applicable to a transaction where the customer authorizes his broker to purchase stock for him on a commission basis, in that this is not a contract for the sale of securities, but merely a contract of agency. See Lindsey v. Stein Brothers & Boyce, 222 Tenn. 149, 433 S.W.2d 669 (1968); Reinhart v. Rauscher Pierce Securities Corp., 83 N.M. 194, 490 P.2d 240 (New Mexico Court of Appeals 1971); Stott v. Greengos, 95 N.J.Super. 96, 230 A.2d 154 (1967); DiJulio v. Digicon, Inc., 339 F.Supp. 1284 (United States District Court of Maryland 1972).

This same rule is recognized by all the textbook writers who have considered the question. In Israels and Guttman, Modern Securities, Transfers, Appx. pp. 70–71 (1967), it is stated:

> "As between a broker and his customer the applicability of this section will depend upon whether or not the broker acts as agent, or (as in some transactions on the over the counter market), as principal sells to or purchases from his customer. . . . Where the broker acts as agent the contract between broker and customer is not 'for the sale of securities.' . . . [E]ven where . . . the transaction is conducted entirely orally (perhaps entirely by telephone), the contract should be completely enforceable under the general provisions of the Statute of Frauds permitting enforcement of oral contracts performable within one year. . . . In strict terms, this section would not be applicable in such a case." (4 UCC Reporting Service, p. 215).

See also 3 Anderson, Uniform Commercial Code, Investment Securities, Second Ed., Section 8–319:5, p. 789; 21 A.L.R.3d 964, 977, Section 4(d).

This rule is logically sound and clearly within the purpose of the Uniform Commercial Code by bringing the law governing commercial transactions into accord with actual commercial practice. It would not be logical or practical for a customer to call a broker and tell him to buy or sell some shares of stock and then have up to ten days in which to confirm or deny such action. Furthermore, the customer's contract with the broker is not a sale as defined by our Code. See Section 2.106, supra. Rather, the status of the broker is clearly that of an agent. See Restatement of the Law, 2nd Ed., Agency, p. 7; 12 C. J.S. Brokers § 11.

The trial court erred in holding that the contract between appellant and appellee was barred by the Statute of Frauds. The take-nothing summary judgment is therefore reversed and the cause remanded for trial on the merits.