See also D.C., 53 F.R.D. 14.

**Sally BASCH, et al., Plaintiffs,**

v.

**TALLEY INDUSTRIES, INC., et al.,
Defendants.**

**No. 70 Civ. 4144.**

United States District Court,
S. D. New York.

April 30, 1971.

---

Austrian, Lance & Stewart and Cowan, Liebowitz & Latman, New York City, for plaintiffs; William Klein, II, Alan Latman, Martin J. Bluestein and Kath-leen O. Cress, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendant Talley Industries, Inc.; Walter L. Stratton, Benjamin Vinar, Brent L. Brandenburg and Glenn O. Koppell, New York City, of counsel.

METZNER, District Judge:

The present motion is brought pursuant to Rule 12(b), (e) and (f), Fed.R. Civ.P., for dismissal of plaintiffs' second, third, fourth, fifth, sixth and seventh causes of action.

This suit arises out of the merger of General Time Corporation (GTC) into Talley Industries, Inc. (Industries). The plaintiffs were shareholders of GTC common stock at the time of the activities complained of, and they sue on their own behalf, derivatively on behalf of GTC, and as representatives of various classes of GTC stockholders. The action is based on the federal securities laws as well as on the common law, and the relief sought is damages and rescission of the merger. The defendants are GTC, Industries, directors of these corporations, and numerous others involved in the merger negotiations.

There follows a summary of the detailed allegations of the complaint. Until the time of the merger GTC was a Delaware corporation engaged in the manufacture and sale of clocks and watches, with stock traded on the New York Stock Exchange. Industries is a conglomerate, incorporated under the laws of Delaware. Its stock has been traded on the New York Stock Exchange since October 1, 1968, and before that was traded on the American Exchange.

In December 1967, Industries began purchasing shares of GTC stock with a view toward merging the two companies. At the GTC stockholders' meeting on April 22, 1968, a slate of Industries nominees swept every position on the GTC board of directors.

The Industries slate took office on January 13, 1969, and by February 12, 1969, a merger plan had been approved by the boards of directors of both corporations. The plan provided for an optional exchange of one share of GTC common stock for either one share of Industries common stock or one share of Industries Preferred convertible into one share of Industries common. It received SEC approval on February 10, 1970.

A meeting of GTC stockholders of record as of April 13, 1970, was called for May 14, 1970, to vote on the merger. Prior to the meeting these stockholders received management's proxy statement and a form soliciting proxies for approval of the merger. The merger was approved and shortly thereafter GTC was merged into Industries.

The plaintiffs charge that from the time Industries first started to buy GTC stock in December of 1967, Industries was engaged in a scheme to arrange a merger which would be inequitable to GTC and its shareholders. There were two main parts to this scheme. The first involved manipulation of the price of GTC stock downward and Industries stock upward so that GTC shareholders would receive less than fair value when they exchanged their stock for Industries stock. Plaintiffs claim that this manipulation began shortly after the Industries slate was elected to the GTC board of directors and continued until the time of the merger.

The second part of the scheme involved the management proxy material which the plaintiffs claim contained numerous false and misleading statements. Plaintiffs charge that the proxy statement overstated Industries' earnings before taxes, net earnings, earnings per share, and stockholders' equity for the nine months ending December 31, 1969, and that the statement failed to disclose decreases in cash flow and working capital that occurred in fiscal 1970.

There are two classes on behalf of which claims are made. The Proxy Fraud Class includes all GTC shareholders as of April 13, 1970, who were entitled to receive the proxy material for the May 14th stockholders' meeting. The Stock Fraud Class includes all persons who purchased, sold, or exchanged GTC common stock between the time Industries first bought GTC stock on December 27, 1967, and the date of the merger.

*3rd and 6th Causes of Action*

These are derivative claims on behalf of GTC against Industries alone. The third cause of action is based on alleged violations of the federal securities laws and the sixth arises under the common law.

The defendant argues that both causes of action should be dismissed because GTC, upon its merger into Industries on May 14, 1970, ceased to exist and lost its capacity to sue or be sued. Therefore, it is argued that the plaintiffs may not bring this action derivatively on GTC's behalf.

■ Capacity to sue depends on whether the person who is bringing suit has authority to use the courts of the jurisdiction in question. This is a problem of power and depends neither on the court involved nor on the cause of action asserted. Under Rule 17(b), Fed. R.Civ.P., "The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."

■ Until the time of the merger, GTC was a Delaware corporation. It was merged into Industries, also a Delaware corporation. The merger was effected pursuant to the laws of Delaware. Thus, Delaware law will determine the capacity of GTC to sue and the capacity of plaintiffs to sue derivatively on GTC's behalf.

■ The law of Delaware is quite clear on this point. Once a corporation has been merged out of existence, its rights, privileges and very identity are merged into the remaining corporation. 8 Del.C. § 259. By virtue of the merger, the merged corporation loses its capaci-

ty to sue the corporation into which it has been merged; likewise, the stockholders of the merged corporation lose the right to sue derivatively. Heit v. Tenneco, Inc., 319 F.Supp. 884 (D.Del. 1970); Bokat v. Getty Oil Co., 262 A.2d 246 (Del.Sup.Ct.1970); Braasch v. Goldschmidt, 41 Del.Ch. 519, 199 A.2d 760 (Del.Ch.1964).

The plaintiffs, however, contend that more is at issue here than a mere question of capacity. They argue that to prohibit a derivative suit in this case would be to prevent GTC from asserting its private right of action under the federal securities laws and would therefore run counter to the Supreme Court's opinion in J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). This argument, of course, avails plaintiffs nothing as to the sixth cause of action, which is based on the common law, not on the federal securities laws. But even as to the third cause of action, which is a federal law claim, it offers no help.

The *Borak* case was not concerned with capacity to sue, but with whether the claim advanced was cognizable in the jurisdiction. In *Borak* the Supreme Court created a private right of action under the federal securities laws. This is quite different from considerations of who shall be allowed to assert that right or what sort of relief he may obtain.

■ The Court stated that a private right of action was necessary effectively to enforce the securities laws. In the present case effective enforcement of the federal securities laws does not require that plaintiffs be permitted to sue derivatively on behalf of GTC. Any injury which GTC suffered has manifested itself by injury to its shareholders. Plaintiffs are engaged in two class actions against the defendants on behalf of these shareholders. The federally protected right is adequately asserted in the first and second causes of action, and enforcement of the securities laws would

in no way be enhanced by adding a derivative claim on top of the class action claims. See Vine v. Beneficial Finance Co., 374 F.2d 627, 637–638 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L. Ed.2d 460 (1967).

■ Insofar as plaintiffs seek rescission of the merger, which may be a justification for allowing a derivative suit, they are asking for relief which is totally impractical in this case. When GTC existed, it and Industries were corporations with thousands of shareholders and millions of outstanding shares. These shares were traded daily on the New York Stock Exchange. To rescind this merger it would be necessary to trace each share of Industries stock which was exchanged for a share of GTC stock. In all probability, innumerable transactions have occurred involving shares of Industries stock and untold numbers are now in the hands of persons who had nothing whatsoever to do with the merger. But even if this formidable task of tracing were possible, it would do little good. These new shareholders purchased, in good faith, shares they believed to be shares of Industries; they now believe, in good faith, that they are Industries shareholders. This court cannot order these persons to return their shares to those who owned them on April 13, 1970.

It should be pointed out that the result here is not inconsistent with the result in Miller v. Steinbach, 268 F.Supp. 255 (S.D.N.Y.1967). In that case the court held that the shareholders of a Pennsylvania corporation which had been merged out of existence could bring a derivative suit under the federal securities laws against the corporation into which it merged. But the court emphasized that, unlike the situation in Delaware, the Pennsylvania courts had never passed on the precise issue of a merged corporation's capacity to sue. 268 F.Supp. at 267.

The third and sixth causes of action are dismissed.

*7th Cause of Action*

This is a derivative common law claim asserted against Smith, Barney & Co., Charles J. Kennard and Thomas Murtagh. None of these defendants has joined in the motion to dismiss. Therefore the motion is denied.

*5th Cause of Action*

■ This is an action on behalf of the Proxy Fraud Class against all defendants, seeking common law relief for breach of fiduciary duty. The defendants contend that the fifth claim is nothing more than a repetition and reallegation of the facts and charges contained in the fourth cause of action.

This contention is without merit. The plaintiffs are not seeking merely to double their damages for a single wrong committed by Industries. See Long Island Electronics Supply Corp. v. Sylvania Electric Products, Inc., 33 F.R.D. 15, 16 (S.D.N.Y.1963). Each claim recites different conduct and asks for different relief based on different theories. Taken together, the two causes of action request, in claim four, damages for the Stock Fraud Class and rescission, and, in claim five, damages for the Proxy Fraud Class. Claim four concerns fraud; claim five a breach of fiduciary duty. Claim four focuses on misstatements made by Industries to GTC shareholders; claim five on the merger negotiations between Industries and the GTC board of directors, which was completely controlled by Industries. While there might be some overlapping, the two causes of action are not essentially the same.

The motion is denied.

*2nd and 4th Causes of Action*

■ The second cause of action is a class action on behalf of both classes against all defendants and seeks relief under the federal securities laws based on manipulation of stock prices. The fourth claim has been described immediately above.

The defendants move to dismiss these causes of action on two grounds. The first challenges the claims insofar as they are brought on behalf of purchasers of GTC stock. The defendants argue that if the price of GTC stock were fraudulently depressed, the only persons who could have been injured were sellers; that buyers of GTC shares would have been the beneficiaries of such manipulation.

The defendants, however, assume that the evil in this case is merely the price of GTC stock. In fact, much more is at issue. The essence of this litigation is the defendants' alleged scheme to secure a merger between Industries and GTC on terms which were unfair to GTC and its stockholders. The defendants' aim was not to damage GTC shareholders when they bought their shares, but when they approved the merger and agreed to exchange their stock for less than fair value. The scheme involved more than manipulation of the price of GTC stock downward. It also involved manipulation of the price of Industries stock upward. Thus, even those GTC stockholders who bought in the artificially depressed market were faced with the prospect of receiving in the merger less than they had paid for their shares.

Indeed, had these purchasers known of the price manipulation, it is doubtful that they would have bought at all. Having bought, they found themselves locked into a scheme to defraud them, and, upon approval of the merger, became victims of the scheme along with all other GTC shareholders. They were not beneficiaries of, but pawns in, the defendants' plan. In such a situation they are entitled to recover whatever damages they suffered as a result of the defendants' fraud. See Chasins v. Smith, Barney & Co., 438 F.2d 1167 (2d Cir. 1971); Robinson v. Cupples Container Co., 316 F. Supp. 1362, 1364–1366 (N.D.Cal.1970).

■ The defendants' second ground for dismissing these causes of action challenges the right of plaintiffs to sue on behalf of sellers of GTC stock. The defendants argue that plaintiffs nowhere

allege that they sold GTC stock during the time the defendants were supposed to be manipulating the price.

There is no question, however, that those who did sell GTC shares during the period of manipulation suffered harm. Furthermore, it cannot be doubted that plaintiffs, all of whom were GTC shareholders on the record date, may sue for injuries received as a result of the defendants' wrongful acts. The issue here is merely whether the plaintiffs can properly represent the class of sellers.

This question of representation should be raised in a class action motion, not in a motion to dismiss.

The defendants' motion to dismiss the second and fourth causes of action insofar as they relate to purchasers and sellers of GTC stock is denied.

So ordered.