Charles DiJULIO et al.

v.

DIGICON, INC., et al.

Civ. No. 70–1182.

United States District Court,
D. Maryland.

March 27, 1972.

See also D.C., 325 F.Supp. 963.

Fred Ginsberg, Eugene V. Chircus, William H. Manger and John E. Dees, Jr., Baltimore, Md., for plaintiffs.

J. Crossan Cooper, Jr., John Henry Lewin, Sr., and Wilbur E. Simmons, Jr., Baltimore, Md. (B. J. Bradshaw, Carolyn Dineen Randall and Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel), for defendants Digicon, Inc., Executive Officers and/or Directors of Digicon, Inc., and Selling Shareholders of Digicon, Inc.

William L. Marbury, Decatur H. Miller and Paul V. Niemeyer, Baltimore, Md. (Leonard Joseph, Hugh N. Fryer and Dewey, Ballentine, Bushby, Palmer & Wood, New York City, of counsel), for defendant Underwriters.

George Cochran Doub and Theodore S. Kaplan, Baltimore, Md. (Weinberg & Green, Baltimore, Md., Michael A. Cooper and Sullivan & Cromwell, New York City, of counsel), for defendant Haskins & Sells.

THOMSEN, District Judge.

Plaintiffs, who own a total of 700 shares of stock of Digicon, Inc.,[1] have filed this action, which they seek to maintain as a class action under Rule 23, F.R.Civ.P., alleging violations of the Securities Act of 1933[2] and the Securities Exchange Act of 1934[3] in connection with a public offering of common stock of Digicon, Inc. (Digicon). The defendants are:

1. Digicon, which sold to the defendant underwriters most of the stock included in the public offering;

2. Designated "selling shareholders", who sold to the underwriters the rest of the stock which was included in the public offering;

3. Designated "executive officers and/or directors" of Digicon who signed the prospectus;

4. Shearson, Hammill & Co., the "managing underwriter", and the 70 other underwriters named in the prospectus; and

5. Haskins & Sells, the "accountant" which certified certain financial statements in the prospectus.

The complaint states that it is a suit for damages arising under the Securities Laws of the United States; it contains five causes of action, alleging separate but related violations of the 1933 and 1934 acts, based upon alleged infirmities in the prospectus and alleged failures to report certain events which occurred shortly thereafter.

Defendants have moved to dismiss or for summary judgment with respect to each cause of action. Plaintiffs have moved for summary judgment on the second cause of action. Defendants have filed affidavits in support of their motions, and a few exhibits have been received and considered by agreement of the parties.

1. DiJulio, 200 shares, Mr. & Mrs. Barshack, 400 shares, and Mr. & Mrs. Finglass, 100 shares.

2. 15 U.S.C.A. 77a et seq.

3. 15 U.S.C.A. 78a et seq.

*Facts*

The facts essential to an understanding of the legal issues decided in this opinion are set out below. There is no dispute about the historical facts, although there is dispute with respect to the legal conclusions to be drawn therefrom.

1. Digicon is engaged in the business of collecting and processing seismic and other geographic data for use by the petroleum industry in its search for new oil reserves.

2. Before the public offering involved in this case there had been no public market for its stock.

3. On April 22, 1969, Digicon filed with the Securities and Exchange Commission (SEC) a Registration Statement covering a public offering of 435,000 shares of its common stock ($.10 par value) at $22.00 per share.

4. On June 13, 1969, Digicon filed Amendment No. 1 to the Registration Statement; that Amendment contained, among other matters, a Prospectus dated June 13, 1969, which became effective on that date and was required to be delivered to all purchasers of the stock during the following 90 days.

5. By a contract which was also dated June 13, 1969, Digicon had agreed to sell 300,000 shares and the "selling shareholders" had agreed to sell 135,000 shares of Digicon common stock to the 71 defendant underwriters (Shearson, Hammill & Co. being the managing underwriter) at $20.55 per share. The initial selling price to the public was set by the Prospectus at $22.00 per share.

6. On June 24, 1969, plaintiffs Jack and Gertrude Barshack ordered the purchase of 200 shares of Digicon stock through Francis I. duPont, A. C. Allyn, Inc. (duPont), one of the defendant underwriters; the order was executed that day on a commission basis at a price of $20.50 per share. On July 2 the Barshacks' order for 200 additional shares was executed at $25.00 per share; later that day their order for another 200 shares was executed at $26.50 per share. Early in August 1969 the Barshacks sold 200 shares of their stock, at about $20.00 per share, leaving them with 400 shares at the time of suit.

7. On July 2, 1969, plaintiff DiJulio ordered the purchase of 200 shares of Digicon stock through duPont; the order was executed on a commission basis that day at a price of $25.00 per share.

8. On the morning of July 8, 1969, plaintiffs Leon and Leonora Finglass ordered the purchase of 100 shares of Digicon stock through duPont; the order was executed the same morning at a price of $23.00 per share.

9. On July 8, 1969, a fire broke out on a vessel leased by Digicon while the vessel was in Atlantic City preparing for operations in the Atlantic Ocean. The fire lasted two days and damaged or destroyed certain equipment owned by Digicon; the loss was covered by insurance. Although the fire delayed the start of the vessel's operations until mid-September, and rough waters caused a suspension of operations in early December, the vessel resumed operations in the spring of 1970 and completed its contract, as well as additional work ordered by the customers.

10. In early August 1969, strong winds resulting in movements of ice, caused a suspension of operations of one of the vessels leased by Digicon which had commenced operations in July in the Arctic Ocean. Although the vessel resumed its operations in early September, by the 18th of that month freezing conditions and ice storms necessitated the removal of the vessel from the Arctic to prevent its being iced in for the winter.

11. The other leased vessel in the Arctic area was forced to cease operations on or about September 23 because of freezing conditions and ice storms.

12. Digicon's Annual Report for its 1969 fiscal year, which was distributed to its stockholders on October 7, 1969, stated:

"Revenues for the last portion of 1969 would have been considerably

greater if the Company had full use of a marine vessel which sustained fire damage accidentally and had subsequent extended repairs. Similarly, weather conditions sometimes affect our progress in specific areas. Unusual ice conditions in the Arctic Ocean hampered the progress of our marine surveys in this area. We continue to be optimistic about our opportunities in this portion of the world and plan to aggressively operate in this market."

13. As a result of the freezing conditions in the Arctic, Digicon was unable to complete the contracts which were dependent upon the operations of the two vessels. The loss caused by these events was reported by Digicon to the SEC on November 10, 1969, in a Current Report on Form 8–K for the month of October.

14. The daily closing bid price of Digicon stock on the over-the-counter market fluctuated between 20 and 22½ in June, between 16½ and 24½ in July, between 18 and 21 in August, between 16¾ and 20 in September, and between 17¾ and 24¼ in October. In November it dropped from 22½ to 17, and in December from 17½ to 9. In January 1970 it rose to 12 before dropping back to 9.

### The Pleadings

On October 15, 1970, plaintiffs filed the present suit, alleging five causes of action. Briefly stated, the first cause of action, against all defendants, alleges that the June 13 prospectus misstated, or failed to disclose properly, material facts necessary to make the statements therein not misleading, in violation of sections 11(a), 12(2), 17(a) (1) and (2) of the 1933 Act. The second cause of action, based on the same statutory sections as the first, alleges the failure by all defendants except the accountant to state in a concise paragraph the high risk factors pertaining to Digicon and its operations. The third, based on the same sections, alleges that all defendants except the accountant failed to amend the prospectus during the 90 day period during which it was required to be delivered to purchasers of the stock, to reflect the impact of the fire and ice storms on Digicon's operations and finances. The fourth alleges that all defendants, except the accountant and the selling shareholders, failed to file timely reports with the SEC as required by sections 12(g) and 15(d) of the 1934 Act,[4] and that the reports which were filed did not fully disclose certain information, in violation of sections 13(a), 18(a) and 20(a) of the 1934 Act.[5] The fifth alleges that defendants, except Digicon and the accountant, purchased or sold shares of the stock based on undisclosed information, in violation of sections 9(a) and 10(b) of the 1934 Act.[6]

At the end of the first two causes of action, it is alleged: "Upon information and belief, plaintiffs and all shareholders of 'Digicon' similarly situated have sustained damages in excess of $8,500,-000." The other three causes of action allege damages in excess of $15,000,000. No other relief is claimed. After demand and hearing, a "more definite statement of complaint" was furnished.

Thereafter each of the defendants filed a motion to dismiss or for summary judgment.[7] Plaintiffs filed a motion for summary judgment on the second cause of action. All defendants rely on affidavits and detailed memoranda attached to their pleadings. Plaintiffs have filed no counter-affidavits but did file a memorandum in reply to defendants' arguments. By agreement of the parties, a few exhibits—sales tickets, settlement sheets, two annual reports of the corporation and a Shearson, Hammill research report—have been received and considered.

---

4. 15 U.S.C.A. 78*l*(g), 78o(d).

5. 15 U.S.C.A. 78m(a), 78r(a), 78t(a).

6. 15 U.S.C.A. 78i(a), 78j(b).

7. One defendant unsuccessfully challenged the jurisdiction of this court. See 325 F.Supp. 963.

Besides contesting the validity of all the claims made by plaintiffs, defendants challenge the propriety of treating this suit as a class action. Briefs dealing with the question of plaintiffs' standing to bring a class action with respect to the third, fourth and fifth causes of action were filed after the hearing on the motions. All class action questions with respect to the first and second causes of action have been reserved until the court has ruled on the motions to dismiss or for summary judgment.

### Discussion

#### I.

In their first cause of action plaintiffs allege "on information and belief" that defendants "failed to disclose material facts in the prospectus necessary to make the statements therein not misleading, in violation of Sections 11(a), 12(2), 17 (a) (1) and 17(a) (2), of the Securities Act of 1933, thus causing damages to those plaintiffs who purchased without knowledge of such omissions * * *."

The four sections referred to by plaintiffs in the first cause of action provide relief against different classes of persons involved in security transactions and afford different remedies. Nevertheless, with respect to the claim asserted in the first cause of action, the test of liability under each of the sections cited is essentially that stated in section 11(a): whether "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, * * *." [8]

In their more definite statement, with respect to the first cause of action, plaintiffs allege that "Defendants failed to disclose in the Prospectus of Digicon, Inc., effective June 13, 1969, the following material facts and statements of fact which Plaintiffs claim were mislead-

ing as of the effective date; * * *." Then followed more than 30 claimed omissions or misstatements.

The court has examined (1) each of these alleged omissions or misstatements, (2) the "refutations" thereof filed by defendants as part of their motions to dismiss or for summary judgment, and (3) all affidavits and exhibits bearing thereon, particularly the prospectus, and has considered all memoranda filed by the respective parties. All but two of the alleged omissions or misstatements were fully refuted in the motion to dismiss the complaint or for summary judgment filed by Digicon, its officers, directors and selling shareholders. Those two were fully refuted in a similar motion filed by Haskins & Sells.

In many instances plaintiffs' complaint was that an item had not been "stated on the cover page" of the prospectus or in some other specified place. Plaintiffs have cited no statute, rule promulgated by the SEC, or binding decision, which requires that particular items be placed where plaintiffs argue they must be placed. A reading of the prospectus as a whole shows that all items to which plaintiffs refer were sufficiently disclosed to meet the applicable test that the prospectus contain all material facts "required to be stated therein or necessary to make the statements therein not misleading." [9]

The court concludes that there is no genuine issue as to any material fact necessary to a decision of defendants' motion for summary judgment on the first cause of action for the reasons stated above, and that defendants are entitled to judgment on that cause of action as a matter of law. Rule 56, F.R.Civ.P., and cases cited in the Advisory Committee note thereto.

It is unnecessary, therefore, to discuss other points raised by defendants in connection with the first cause of action.

---

8. It is not contended that any plaintiff knew of any claimed untruth or omission at the time he acquired his stock.

9. 15 U.S.C.A. 77k(a).

## II.

The second cause of action alleges that defendants, except Haskins & Sells, "failed to prepare a prospectus as required by Section 10 of the Securities Act of 1933 in that said prospectus failed to state in a concise paragraph the high risk factors pertaining to the company and its operations." It continues: "The plaintiffs suffered damages equal to the difference between the original offering price and/or purchase price of the securities and the subsequent market value because of the failure of the prospectus to disclose the high risk factors involved in the offering. Such failure to disclose is in violation of Sections 11(a), 12(2), 17(a) (1), and 17(a) (2) of the Securities Act of 1933."

Both sides have moved for summary judgment on the second cause of action.

What has been said above with respect to the first cause of action disposes of plaintiffs' allegations in the second cause of action, except the allegation that section 10 of the 1933 Act requires that high risk factors be stated "in a concise paragraph." In plaintiffs' more definite statement they add that the prospectus "failed to have an introductory statement encaptioned 'High Risk Factors' summarizing the principal factors making the offering one of high risk or speculative."

No such requirement is contained in any statute, rule promulgated by the SEC, or court decision. The pertinent rules of the SEC are Rules 408 and 421, set out in the margin.[10]

Plaintiffs appear to have taken the alleged requirement from a statement in Securities Act Release No. 4936, issued December 9, 1968, set out in note 11 in the margin.[11] However, Release No. 4936

---

10. Rule 408, 17 C.F.R. 230.408, provides in pertinent part:

"In addition to the information expressly required to be included in a registration statement, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading."

Rule 421, 17 C.F.R. 230.421, provides in pertinent part:

"(a) The information required in a prospectus need not follow the order of the items or other requirements in the form. Such information shall not, however, be set forth in such fashion as to obscure any of the required information or any information necessary to keep the required information from being incomplete or misleading. Where an item requires information to be given in a prospectus in tabular form it shall be given in substantially the tabular form specified in the item.

"(b) All information contained in a prospectus shall be set forth under appropriate captions or headings reasonably indicative of the principal subject matter set forth thereunder. Except as to financial statements and other tabular data, all information set forth in a prospectus shall be divided into reasonably short paragraphs or sections.

"(c) Every prospectus shall include in the forepart thereof a reasonably detailed table of contents showing the subject matter of the various sections or subdivisions of the prospectus and the page number on which each such section or subdivision begins.

"(d) All information required to be included in a prospectus shall be clearly understandable without the necessity of referring to the particular form or to the General Rules and Regulations. Except as to financial statements and information required in tabular forms, the information set forth in a prospectus may be expressed in condensed or summarized form. Financial statements included in a prospectus are to be set forth in comparative form if practicable, and shall include the notes thereto and the accountants' certificate."

11. The statement in Release No. 4936 reads as follows:

"Where appropriate to a clear understanding by investors there should be set forth immediately following the cover page of the prospectus under an appropriate caption a carefully organized series of short, concise paragraphs, under subcaptions where appropriate, summarizing the principal factors which make the offering one of high risk or speculative. These factors may be due to such matters as an absence of an operating history of the registrant, an absence of profitable operations in recent periods, an erratic

states plainly: "These guides are not rules of the Commission nor are they published as bearing the Commission's official approval."

Plaintiffs cited a number of Security Act Releases in stop-order proceedings under section 8(d) of the 1933 Act, 15 U.S.C.A. 77h(d). Such releases do not have the effect of rules and regulations of the SEC adopted pursuant to the power conferred by, or under the procedure established by, section 19(a) of the 1933 Act, 15 U.S.C.A. 77s(a). The releases cited by plaintiffs [12] are analyzed in detail in the appendix to the memorandum of Digicon et al. in opposition to plaintiffs' motion for summary judgment. It is sufficient to say here that those releases deal with specific facts materially different from the facts in the present case. They apply the principles of Rules 408 and 421, see note 10 supra, to their specific facts. They do not exalt form over substance. They require "that those who propose to offer securities to the public . . . disclose plainly all pertinent facts on the basis of which investors may arrive at their own informed judgments regarding such securities," *Woodland Gas and Oil Co., Inc.* "The primary point is that it [the prospectus] should be plainly understandable to the ordinary investor", *Universal Camera Corporation.*

It would be impractical to put in one introductory statement everything plaintiffs argue should be there. The nature of the business, its brief history, the tangible book value per share of common stock before the offering ($.76 per share) and after the offering ($3.74 per share), and a statement that the company did not plan to pay cash dividends on the common stock in the foreseeable future, are among the items set out on the first page after the cover page, which also referred to the Statement of Consolidated Income. That statement was on the following page and showed net income per share of common stock for the last complete fiscal year of 21¢ a share. The earnings during the seven months ended February 28, 1969 (40¢ a share), were shown on that statement, and the earnings for the nine months ended April 30 (43¢ a share) on the next page, with a notation that they were not necessarily indicative of the results which might be expected for the year. The financial statements were clear and adequately explained. The nature of the business was stated in short paragraphs (see Rule 421), under appropriate headings and subheadings. The risk factors, including weather conditions and equipment problems were adequately stated in short paragraphs under the headings "Factors Affecting Business" and "Competition". The presentation made clear to the average investor that this was a speculative investment, and gave him in satisfactory form the facts necessary for him to evaluate it.

Defendants are entitled to summary judgment on this cause of action. *A fortiori*, plaintiffs' motion for summary judgment must be denied.

### III.

The third cause of action (¶ 25) alleges an information and belief that "the defendants 'Digicon', 'executive officers and/or directors', 'selling shareholders', 'managing underwriter', and 'underwriters' failed to amend the prospectus prior to September 12, 1969 through which time they were required to deliver a current prospectus. That in or about July 1969 a fire and ice storms impaired the company's operations and the defendants knew or should have known that such

financial history, the financial position of the registrant, or the nature of the business in which the registrant is engaged or proposes to engage. * * *"

12. In the Matter of Universal Camera Corporation, CCH Fed.Sec.L.Rptr. ¶ 75,-560 (1945); In the Matter of Woodland Oil and Gas Co., Inc., CCH Fed.Sec.L. Rptr. ¶ 76,598 (1958); In the Matter of Doman Helicopters, Inc., 41 S.E.C. 431 (1963); In the Matter of Richmond Corporation, CCH Fed.Sec.L.Rptr. ¶ 76,904 (1963); In the Matter of Franchard Corp., CCH Fed.Sec.L.Rptr. ¶ 77,113 (1964).

1291 (at top right)

occurrence would have a materially adverse effect on the company's operating results. That those plaintiffs who purchased following these occurrences were damaged in an amount equal to the difference between the amount paid for the securities and their subsequent market value. That the failure to amend the prospectus was in violation of Sections 11(a), 12(2), 17(a) (1), and 17(a) (2) of the Securities Act of 1933".

The fourth cause of action alleges (¶ 28) on information and belief that "the defendants 'Digicon', 'executive officers and/or directors', 'managing underwriter', and 'underwriters' failed to file timely reports as required by Sections 12 (g) and 15(d) of the Securities and Exchange Act of 1934 in that they did not file reports regarding the adverse effect on operations caused by the fire damage and ice storms in July 1969 until November 10, 1969 and the defendants knew or should have known that such occurrences would have a materially adverse effect on the operating results of the company, as provided for in Sections 13(a), 18(a) and 20(a) of the Securities and Exchange Act of 1934. That the plaintiffs who purchased these securities after August 10, 1969 or who failed to sell these securities suffered damages equal to the loss in market value of the securities as of August 10, 1969 and their subsequent market value."

The fifth cause of action alleges (¶ 31) on information and belief that the "defendants 'executive officers and/or directors', 'selling shareholders', 'managing underwriter', and 'underwriters' purchased or sold the securities based on undisclosed information in violation of Sections 9(a) and 10(b) of the Securities and Exchange Act of 1934 causing damage to those plaintiffs who purchased or sold securities without such knowledge resulting in damages equal to the difference between the amount they paid for or received for such securities and the subsequent market value of such securities."

The more definite statement of complaint specifies additional alleged failures to report.[13]

In the more definite statement, with respect to the fifth cause of action, plaintiffs allege "on information and belief based on information contained in the Prospectus of June 13, 1969 and the Proxy Statement dated December 3, 1970 that the Defendants William E. Shell, Enders A. Robinson, Patrick H. Poe and Shearson Hammill and Co., Inc. purchased or sold the Common Stock of Digicon, Inc. while possessing undisclosed information. On information and belief it is alleged that these defendants purchased or sold securities after October 12, 1969 and prior to October 31, 1970."

██ None of the plaintiffs has standing to maintain any of the claims asserted in the third, fourth and fifth causes of action, because they purchased their stock before the occurrence of any of the events which they claim should have been reported by amendment of the prospectus (third cause of action), by filing timely reports (fourth cause of action), or by disclosure to subsequent purchasers (fifth cause of action).

The agreed exhibits show that all of the Digicon stock ever owned by plaintiffs was purchased before noon on July 8, 1969, the day the fire began, a month before the ice trouble in the Arctic, and be-

---

13. The more definite statement lists those items as follows:

"a. Resignation on July 17, 1970 of William E. Shell, Vice President, Director and Parent of the Defendant, Digicon, Inc.

"b. Resignation on July 27, 1970 of Enders A. Robinson, Vice President, Director and Parent of the Defendant, Digicon, Inc.

"c. Resignation on November 18, 1970 of David L. Brown, Chairman of the Board, President, and a Parent of the Defendant, Digicon, Inc.

"d. Failure to report fire and ice storm off the coast of Alaska in a timely manner.

"e. Failure to report accurately report conditions regarding listing on the American Stock Exchange."

fore any of the resignations referred to in plaintiffs' more definite statement.[14]

The third cause of action alleges that "those plaintiffs who purchased following these occurrences were damaged in an amount equal to the difference between the amount paid for the securities and their subsequent market value." Clearly none of the plaintiffs fall within that class. They seek to avoid this point, however, by three arguments.

■ (1) Plaintiffs argue that they had a right to rescind their respective purchases within ten days under Article 95B, Section 8–319(c) of the Annotated Code of Maryland (1964 Repl. Vol.).[15] Plaintiffs cite no authority in support of this contention. The only decisions cited by defendants or found by the court have held that in such a transaction as this, the broker is acting as the agent of the customer and section 8–319(c) does not apply. Stott v. Greengos, 97 N.J.Super. 96, 230 A.2d 154 (1967); Lindsey v. Stein Bros. & Boyce, 222 Tenn. 149, 433 S.W.2d 669 (1968). See also Israels and Gutman, Modern Securities Transactions, App., pp. 69–71, and Weiss v. Dempsey-Tegeler & Co., 443 S.W.2d 934 (Tex.1969). It is not the purpose of section 8–319(c) to give a purchaser of stock through a broker a period of ten days in which to repent of his purchase if the market goes down.

(2) Plaintiffs also argue that they might have sold their stock if notice of the fire and storms had been made public earlier. They did not sell in October, after they learned of the fire and the beginning of the ice trouble, while the market rose from 20 bid on October 6 to

24½ bid on October 24 and was 22½ bid on October 31. If more information about the difficulties with the ice had been available and given, its effect would presumably have had a tendency to depress the price of the stock.[16] In Marino v. Coburn Corp. of America, CCH Fed. Sec.L.Rptr. ¶ 92,959 (E.D.N.Y.1971), Judge Dooling said:

"Yet if there is such a definable group of nonselling stockholders, it is all but impossible to envisage them as damaged in their investor interest by the fact of non-disclosure as distinguished from being damaged by reason of the fact that—whenever and however disclosed—the company had a heavy loss to shoulder in the immediate future. There is no indication that a press release which told everything that management knew and anticipated would not have at once brought about an adjustment of market price to a level at which existing stockholders would register the maximum loss in market value that could flow from such a disclosure."

(3) Plaintiffs also assert "Jack and Gertrude Barshack sold two hundred (200) shares after the occurrence of the fire * * * at a point in time when no disclosure of the adverse happenings had been made and suffered a loss on their holdings." For the reasons stated above, this contention is entirely without merit.

### Class Action

■■ A party who lacks standing to sue on his own behalf may not assert claims on behalf of an alleged class of which he is not a member. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7

---

14. All of plaintiffs' shares were purchased on or before July 2, except the 100 shares purchased by the Finglasses. Their order was placed and executed before noon on July 8.

15. That section replaced the old Statute of Frauds with respect to security transactions. It provides:

"A contract for the sale of securities is not enforceable by way of action or defense unless
" * * * *

"(c) Within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or * * *."

16. It would have been illegal to furnish plaintiffs with information which was not generally available.

L.Ed.2d 512 (1962); Thaxton v. Vaughan, 321 F.2d 474 (4 Cir. 1963). This rule applies to actions arising under the Securities Acts. Greenstein v. Paul, 275 F.Supp. 604 (S.D.N.Y.1967), aff'd 400 F.2d 580 (2 Cir. 1968); Basch v. Talley Industries, Inc., 53 F.R.D. 9 (S.D.N.Y. 1971); Sanders v. Merrill Lynch, Pierce, Fenner & Smith, Inc., CCH Fed.Sec.L. Rptr. ¶ 93,226 at 91,409 (S.D.N.Y.1970); Puharich v. Borders Electronics Co., Inc., CCH Fed.Sec.L.Rptr. ¶ 92,160 at 96,728 (S.D.N.Y.1968); Cordova v. Bache & Co., 321 F.Supp. 600, 604 (S.D.N.Y.1970); Bluestein v. Friedman, CCH Fed.Sec.L. Rptr. ¶ 92,558 at 98,543–98,544 (S.D. N.Y.1970). See generally Rule 23, F.R. Civ.P., and Advisory Committee Note, 39 F.R.D. 69, 99–100 (1966); 3B Moore's Federal Practice ¶ 23.04 (1969).

For the reasons stated above, defendants' motions for summary judgment must be granted with respect to the third, fourth and fifth causes of action. It is not necessary to reach the other defenses raised in defendants' motions.

An appropriate judgment order will be entered.